UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRENA N. SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | No. 1:13-cv-00091-SEB-MJD |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Trena Scott ("Scott") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA").[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **reverse** the decision of the Commissioner and **remand** the matter for further proceedings.

**I. Procedural History**

Scott filed an application for DIB and SSI on May 5, 2010, alleging an onset of disability as of November 20, 2009.[2] Scott's applications were denied initially on July 7, 2010 and denied on reconsideration on September 15, 2010. Scott timely requested a hearing, which was held

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] Although Scott alleged disability beginning on November 20, 2009 in her applications, she amended the alleged onset date to July 1, 2010 at her hearing due to her part-time self-employment through June of 2010. [R. at 9, 53.]

1

before Administrative Law Judge William M. Manico ("ALJ") by video on October 17, 2011. The ALJ's December 16, 2011 decision again denied Scott's applications for DIB and SSI. The Appeals Council denied Scott's request for review on November 19, 2012, making the ALJ's decision the final decision for purposes of judicial review. Scott timely filed her Complaint with this Court on January 15, 2013.

## II. Factual Background and Medical History

Scott is a thirty-seven-year-old woman who lives with her three children, ages six, eleven, and sixteen. Scott's self-reported medical conditions include migraines, kidney failure, poor eyesight, high blood pressure, leg pain, and swelling. [R. at 181.] Between November of 2009 and June of 2010, Scott became unable to work because of her conditions, her most recent employment being a self-employed cosmetologist/hairstylist. [R. at 53, 183.] In order to manage her medical conditions, Scott reports that practitioners at Wishard Memorial Hospital prescribed Amlodipine (migranes), kidney medication (kidney failure), Lisinopril (high blood pressure), Metropolol (high blood pressure), Oxycodone (pain), sleep meds (insomnia/anxiety), and water pill (swelling). [R. at 185.]

On October 19, 2009, Scott was admitted to Wishard Memorial Hospital ("Wishard") complaining of a week-long headache, blurred vision, blood in her urine, dizziness, fatigue, vaginal discharge, and lower abdominal pain; the ER diagnosed her with high blood pressure ("hypertension") and bacterial vaginosis. [R. at 286.] Scott returned to Wishard again on November 24, 2009 because of her blurred vision and headaches [r. at 289], and she was initially diagnosed with hypertension, renal failure, and low potassium levels in the blood [r. at 288]. Scott was not discharged until December 3, 2009, after her hypertension, renal failure, anemia, chronic headaches, constipation, and blurred vision had stabilized, and she was to schedule

2

follow-up appointments regarding her "severe migraines," her hypertension, and her renal failure. [R. at 316.] St. Vincent's Hospital records from December 3, 2009 reflect diagnoses of chronic headaches, long-standing medical noncompliance, hypertensive retinopathy (retina damage from high blood pressure), hypertensive nephropathy (kidney damage from high blood pressure), and renal failure secondary to high blood pressure. [R. at 272.] Scott returned to Wishard for several follow-up appointments in early 2010. [R. at 318-327.]

On May 3, 2010, Scott's daughter completed a Third-party Function Report, noting that Scott sleeps far more than is normal, has bad memory, cannot stand for more than fifteen minutes without her feet swelling up, has shortness of breath, cannot see clearly, gets terrible headaches, and used to like to sing and dance but does not so this anymore because of her illness. [R. at 210-16.] A May 2010 consultation with Dr. Ibrar Paracha of the Disability Determination Bureau confirmed that Scott "is claiming disability due to chronic kidney disease, poor vision, hypertension, and migraines," but concluded that Scott "does not have any abnormal findings." [R. at 330-33.] Later that month, Dr. Herbert Henry, during a psychological consultative examination, diagnosed Scott with Amnesic Disorder, Major Depressive Disorder, provisional Alcohol Dependence, and Borderline Intellectual Functioning, noting that Scott's "rocking was rather pronounced" during the consultation and that she "appeared to have put forth a good effort on her mental status examination." [R. at 340-41.]

On June 17, 2010, Dr. J. Sands with Disability Determination Services concluded that "[r]eview of evidence shows renal problems do not cause severe disability." [R. at 342.] Then Scott underwent an additional consultative examination with Dr. Jessica Huett on June 30, 2010, and she was diagnosed with Cognitive Disorder, likely premorbid borderline intellectual functioning, high blood pressure, kidney disease, vision problems, and migraines by report; Dr.

Huett explicitly noted that Scott's ability to learn, remember and comprehend simple instructions; to attend, concentrate and complete simple tasks; to interact appropriately with co-workers, supervisors and the public; and to handle routine changes found in the workplace "appears moderately to seriously affected at this time." [R. at 346-47.]

A July 6, 2010 state agency consultative exam with Dr. Maura Clark concluded that, under Listings 12.02 and 12.04 for Organic Mental Disorders and Affective Disorders, respectively, an assessment of Scott's residual functioning capacity (RFC) was necessary, noting that her "coexisting nonmental impairments" require referral to another medical specialty. [R. at 352.] Dr. Clark's mental RFC assessment concluded that Scott is "able to complete only unskilled tasks on a sustained basis without special consideration." [R. at 350.] On May 4, 2011, Dr. Ellen Fan of Wishard Health Services – Forest Manor Health Center, where Scott was treated from late 2010 through early 2011 [r. at 395-410.], wrote that Scott is "unable to work at this time due multiple medical issues – including chronic kidney failure, hypertension, chronic headaches, depression and retinopathy. She is having difficulties with her vision, as well as chronic fatigue and pain, that make any sustained work difficult at this time." [R. at 491.]

At her October 2011 hearing, Scott testified that, among other complaints, she was extremely tired all the time, needing to rest for three to five hours after sending her kids off to school before she could get up again. [R. at 40-41.] Scott also testified to dropping out of business classes after less than a semester because of her poor vision and her headaches with sensitivity to light and sound, which occur every day and last between thirty minutes to one hour. [R. at 42.] Scott had previously been self-employed as a cosmetologist, but she lost all of her clients because she became slow and unable to see. [R. at 43.] Also at the hearing to testify was vocational expert Stephanie Archer, who confirmed that cosmetology is skilled work, but a

4

younger person with limited education who is only capable to simple, unskilled work should be able to find work in Indiana as a cashier or a cleaner. [R. at 54-55.] However, employers at that level would not allow an employee to miss more than one day of work per month. [R. at 55.]

### III.  Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability according to 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the Commissioner determines that the claimant's impairment meets any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant *is* disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; (5) if the claimant can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or

substitute its judgment for that of the ALJ, but only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.   The ALJ's Decision

The ALJ first determined that Scott meets the insured status requirements of the Act through December of 2014 and has not engaged in substantial gainful activity (SGA) since the amended alleged onset date of July 1, 2010. [R. at 11.] At step two, the ALJ found Scott's Cognitive Disorder and Major Depressive Disorder to be the severe impairments that significantly limit her ability to perform basic work activities. [R. at 11.] However, at step three the ALJ found that Scott does not have an impairment or combination of impairments that meet(s) or medically equal(s) one of the listed impairments. [R. at 12.]

After step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Scott has the residual functional capacity (RFC) to perform "simple, unskilled work." [R. at 14.] At step four, because cosmetology exceeds Scott's RFC, the ALJ quickly found that Scott is unable to perform her past relevant work. [R. at 16.] However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Scott can perform, such as being a Cashier or a Cleaner. [R. at 17.] Because of these findings, the ALJ concluded that Scott is not disabled, as defined by the SSA. [R. at 18.]

## V. Discussion

Scott raises three arguments as to why this Court should reverse the decision of the ALJ: (1) the ALJ failed to properly analyze and take into consideration Ms. Scott's complaints of headaches pursuant to Social Security Ruling (SSR) 96-8p, (2) the ALJ failed to articulate his application of SSR 96-7p in assessing Ms. Scott's symptoms, and (3) the ALJ's denial fails to articulate the function-by-function assessment of Ms. Scott's residual functional capacity and logically bridge the evidence to the denial's conclusion pursuant to SSR 96-8p. [Dkt. 11 at 10-20.] The Court will first address the ALJ's failure to consider Scott's headaches in his RFC assessment, which the Court finds amounts to more than mere harmless error.

It is the duty of the ALJ to consider the entirety of the record when making his disability determination; "the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). Specifically, "[i]n determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). When an ALJ fails to address relevant evidence, he runs the risk of impermissibly "playing doctor" by substituting his own judgment for that of a medical professional. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

As Scott points out in her brief in support of her Complaint, SSR 96-8p requires the ALJ to base his assessment on "*all* of the relevant evidence." [Dkt. 11 at 12 (emphasis in original) (quoting S.S.R. 96-8p)]. Such relevant evidence includes medical history, reports of daily activities, lay evidence, and recorded observations. S.S.R. 96-8p. Further, "[c]areful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective

medical evidence alone." *Id.* (emphasis added). Additionally, when conducting an RFC assessment, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, **even those that are not 'severe,'**" as limitations due to impairments that are not severe "may narrow the range of other work that the individual may still be able to do." *Id.* (emphasis added). In sum, an ALJ is required to take even subjective descriptions of self-reported activity of even non-severe limitations into account when assessing the residual functional capacity of a claimant.

Here, the ALJ did not come close to meeting this standard with regard to Scott's headaches. At the beginning of his RFC assessment, the ALJ observed that Scott alleged disability "based on depression, blurred vision, kidney failure and hypertension," initially leaving out any mention of headaches altogether, which is particularly unsettling considering the fact that the first condition Scott mentioned in her disability report was "Migraines." [R. at 14, 181.] The ALJ briefly acknowledged Scott's headaches in his RFC assessment by stating that Scott testified to having "headaches for the last 8 to 10 years, and auditory hallucinations since she was 15 years old," but the ALJ continued to only address and discredit the allegations of hallucinations throughout his RFC assessment, with no further mention of Scott's headaches. [R. at 14-16.] The ALJ did reference Scott's headaches in his step 2 conclusion that Scott's headaches are not a severe impairment, but the ALJ erroneously observed that Scott "continues to have one to two headaches **per month**." [R. at 12 (emphasis added).] In actuality, the relevant testimony is as follows:

> Atty: Okay, and I see headaches mentioned throughout your file as well. Is that a problem for you?
> Scott: Yes, ma'am, I've had headaches, ongoing for eight to ten years and they continue to be a problem.
> Atty: When you have headaches are you able to continue functioning or do you have to go lie down or what do you do?

8

>Scott: Yes, I'm very sensitive to light and to loud music and loud any kind of T.V.'s or anything of that, it has to be totally quiet.
>Atty: How often do you have headaches?
>Scott: **Every day**.
>Atty: How long do they last?
>Scott: They last anywhere between 30 minutes to an hour.

[R. at 42 (emphasis added).] It is evident that the ALJ failed to take into account Scott's actual testimony regarding her headaches and her associated functional limitations.

In addition to Scott's own testimony, the record is rife with a history of diagnoses, treatment attempts, and third-party accounts that the ALJ did not appear to take into consideration in his RFC assessment. Though sometimes diagnosed as "migraines" [*see* r. at 316, 346-47], and at other times diagnosed as "chronic headaches" [*see* r. at 272, 491], several medical professionals have diagnosed Scott with headaches from 2009 through 2011. During Scott's extended hospital stay at Wishard in November into December of 2009, Dr. Brian Robinson observed that Scott's headaches are "persistent and [Scott] gives [history] of longstanding [headaches]. she [sic] has features of several kinds as they worsen with jaw movement more [consistent with] tension, but she also has substantial migraine features." [R. at 301.] In addition to Scott's own account of the debilitating effect of such headaches, her daughter reported that Scott's bad memory, shortness of breath, and "terrible headaches" cause Scott to have trouble with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using hands. [R. at 214.] The ALJ referred to none of this evidence in making the RFC assessment.

The ALJ cites to no evidence contradictory to the abovementioned evidence, and the Court finds none. In support of his step two determination that Scott's headaches are not "severe" impairments, the ALJ cites to a "normal" MRI from December of 2009. [R. at 12.]

9

However, by citing to this fact in order to discredit Scott's headaches, the ALJ improperly substituted his lay opinion as a medical opinion; there is no medical opinion in the record indicating that Scott's normal MRI contravenes the existence of her headaches. It is true that an MRI is a diagnostic test, but it can only be used to rule out ailments that can cause the patient's pain: "laboratory tests are not helpful in diagnosing migraine, cluster, or tension-type headaches." *Diagnosing Your Headache: Headache Evaluation*, THE CLEVELAND CLINIC FOUNDATION (Dec. 10, 2013), http://my.clevelandclinic.org/disorders/headaches/hic_diagnosing _your_headache_headache_evaluation.aspx.

Also in step two, the ALJ noted that "[t]he **medical** record does not support related functional limitations" to support his conclusion that Scott's headaches are not severe. [R. at 12 (emphasis added).] While this constraint may be pertinent to a step two finding, the ALJ's RFC assessment need not be limited to functional limitations reported by the medical record, as "subjective descriptions" and "lay evidence" are portions of the "relevant evidence" that must be taken into consideration during an RFC assessment. S.S.R. 96-8p. Because Scott's headaches are not evaluated in any other section of the ALJ's decision, the ALJ failed to build a logical bridge between the medical record and the RFC assessment made. *Dixon*, 270 F.3d at 1176. Accordingly, the ALJ failed to consider all of the relevant evidence in making his RFC assessment, in violation of SSR 96-8p.

When a claimant complains of severe headaches without providing any treatment history or documentation, the discrepancy can be probative of exaggeration and the ALJ's finding should be affirmed. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). However, when no evidence in the record contradicts the claimant's testimony regarding the severity of her headaches and the ALJ fails to build a logical bridge between the evidence and his conclusion,

reversal is the proper recourse. *Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012) (reversing and remanding because the ALJ failed to take into consideration several of the claimant's self-reported functional limitations due to his headaches).

The facts in this matter are akin to those in *Shauger*, as the ALJ wrongfully ignored the relevant evidence of record regarding Scott's functional limitations in making his RFC determination. This failure was not harmless error, as the ALJ's improper RFC assessment had a direct effect on his step five finding of lack of disability. At the hearing, he vocational expert testified that an individual who would need to miss two days of work per month either due to doctor's appointments or exacerbation of symptoms would not be able to sustain work as a cashier or a cleaner. [R. at 55.] In failing to account for the functional limitations of Scott's "not severe" physical conditions, such as her chronic headaches or migraines, the ALJ committed error that was more than harmless in his assessment of Scott's residual functional capacity. Because reversal is appropriate on the grounds of this first issue alone, the Court will not address Scott's further arguments.

## VI.  Conclusion

For the aforementioned reasons, substantial evidence does not support the ALJ's determination that Scott is not disabled. The Commissioner's decision should therefore be **reversed** and **remanded** to the Social Security Administration for further proceedings consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: __12/12/2013__

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov